So we'll start with United States of America v. Garrett. Good morning, Your Honors. Michael Tanaka appearing on behalf of Mr. Garrett. Computers and computer-related devices, including cell phones, play an increasingly important and essential part of our lives. As our lives move from the physical to the digital, it's only a slight exaggeration to say pretty much everything we do, we do with a computer or a cell phone or is involved. So this case involves that nexus. As our lives become more entwined with these devices, they're used more frequently. But it also means that much, much, much more of our information and our lives are ensconced on these. So what does that mean for this case? Here, Mr. Garrett used e-mail, and for that offense, he has now faced a whole slew of really onerous and far-reaching restrictions. Mainly the two that I want to talk about today are the computer search conditions and the computer monitoring conditions. The search condition applies to all computers and computer-related devices, including specifically named cell phones. Now, that reveals and infringes on a whole host of privacy interests. If you search someone's cell phone, you can find the whole history of their chats, e-mails, phone calls. You can find where they've been, who they've seen. You can find out, if you search their computer, you can find out what sites they've accessed, what they're interested in. Pretty much everything that you do is laid bare. And that's a problem for somebody who's on supervised release and otherwise would be in custody and would have no access at all. Why is that a problem? That's a problem because even though he's on supervised release, the conditions aren't limitless. They have to be reasonably tailored. Well, they're limited. I mean, in this case, for example, it doesn't include the employer's computer. And in particular, and I'd like to address, I think you cite the sales case. I should put my glasses on to make sure I have that right. As an example of a case with similar conditions, but in fact it seems to me the condition there was very different because that required advance approval by a probation officer. In this case, it just requires notifying the probation officer what devices have been used so that if and when the probation officer decides that it's necessary to make further inquiries and to do a search, they know what devices to look at. There's no advance approval requirement here. That's true, but the nature of that search is really onerous, Your Honor, given things have really moved on, things have changed, and given how much of our lives are now on our cell phones, on our computers, those cases are of little import now just because the circumstances are so different. If there was reason to be suspicious, wouldn't it be useful for the probation officer to know what devices the person has used so that he could determine which devices need to be checked? Well, if you read the condition, there's no reasonable suspicion requirement. It's all-encompassing. That's not really the question I asked, though. I'm sorry. The question I asked was, isn't it logical that the probation officer be able to identify what devices have been used? We have little problem with identifying the devices. Well, isn't that what this condition speaks to? That's the first part of the condition. The second part allows both monitoring of all those devices and a search at any time. Well, couldn't the probation officer show up unannounced at your client's residence pretty much any time during the day, come in, search the place? There is no physical search condition in this case. So, no, he couldn't. I mean, he could obviously show up for a visit. He could have reasonable suspicion, right? I suppose so, but that's not an explicit condition. Or a probable cause or something. A probable cause, certainly. He wouldn't need a warrant, right? No. It's not a condition here, but a decade ago we had lots of cases contesting whether probable cause or reasonable suspicion was necessary, and didn't that ultimately play out so that it was an accepted condition if imposed by the court in an appropriate case, an acceptable condition for probation or supervised release? Yes. So the notion that there should be these barricades up against searches, the reasonable suspicion requirement doesn't generally apply. Why should it apply here? If the person can be searched, which is much more intrusive, without requiring reasonable suspicion, what is it about a computer that deserves more protection? It's just that even a search of a person which is physically intrusive doesn't reveal as much private information as a search on one's cell phone would these days. Literally everything, not everything, but almost everything you do is on there, and there has to be some reasonable restriction or reasonable connection between just allowing a probation officer access to rummage through everything in your life for no reason, and what is unoffensive. It doesn't have to be in the law because there is no reasonable suspicion requirement for the personal search. So you're arguing that there should be, but I'm not sure why it is a person's device, and it's not like you're expecting the probation officer to regularly do that. This condition simply requires that the probation officer be advised as to what devices are being used or have been used, and then the judgment of the probation officer will lead to whether or not a search is actually conducted, and you expect that the probation officer has better things to do than to rummage through devices unless he has reason to be concerned. What are your specific concerns with the monitoring condition? In your case, it was condition number 11. Again, it's just a far greater intrusion into privacy. It's like someone sitting over your shoulder and watching everything you do on your computer. That certainly will deter a crime, I guess, but so would having the probation officer sit in your house and watch you 24 hours. You pointed out to us certain conditions that you thought had been imposed. The specific condition of supervisor really says that they should comply with the rules and regulations of the computer monitoring program, and then your office sent us what you thought were the applicable rules and regulations of the central district's probation office. Yes. It turns out that they've changed? Yes, apparently, but not in any meaningful way. Well, they went from 32 to 12 or whatever it was. I mean, they've reduced the number. But the essence, Your Honor, is that, I mean, they don't really, they're not necessarily less onerous by the fewer conditions. It just means that they're giving less notice to what they're doing. The real thing, the real problem here is the monitoring itself. There's no, if you read this, I mean, the district court judge doesn't know what the monitoring does. Certainly Mr. Garrett could have no idea what this monitoring software does. There's no disclosure at all. For all we know, the monitoring software sits there and records every keystroke, and I don't think it turns the camera on, but certainly I guess that's possible. Well, to answer in brief, the government has volunteered a greater restriction than that. I mean, the government represents that it simply allows the probation officer to monitor defendants' online computer use and cites to a case from our court so interpreting the condition. So if that limitation were written in, I mean, were understood to be the proper interpretation of the condition, does that make it acceptable? That certainly makes it closer, but we don't know that. That's not really spelled out here. No, Judge Clifford is just saying what if that's read into the condition. I mean, what if we, in light of what the government says, if we just read it into that condition? That would alleviate some of my concerns about monitoring. It's a start. It's a start, but again, this is like, you know, this is a black box that we're giving probation carte blanche, and no one's looking over it. They get to install this monitoring software. No one tells us what it does, what it monitors. Well, you know, the supervisor really sees your client when he gets released. He can always go back to the district judge and say these are just too onerous. Here's what we need to change. Here's what I'd like you to change. The district court has some supervisory authority over this. I used to get motions when I was a district judge moving to modify the conditions of supervised release. That works a little bit better when they're really straightforward, but when there's – Well, why wouldn't it work here? The district judge could work it out with the probation office, and they could figure out what needs to be modified. I guess they could have a hearing and have someone come in and say, hey, judge, here's what the software does, and then they could figure out whether that was too onerous or not. But it seems that that would be better done in the first instance. The condition should spell out what it does, and then we'll decide whether we need – why put them on at all if we're just going to go back and relitigate them? Not relitigate them. Your client can theoretically come in and say this particular condition is too onerous or unworkable. But he would have to know exactly what it is to do that. All it says is he's going to comply with the computer monitoring program, which is, if you read this, not spelled out all that. You could explain that to him. No, I can't, because I don't understand what it does. They don't tell me what software they're using. They don't tell me what the monitoring does. Okay. Thank you. I'll give you a minute. Okay, thank you. Go ahead. May it please the Court, my name is Sean Peterson, and I represent the United States in this case. Defendant appellant Kelly Garrett was convicted of wire fraud. His use of email was central to his wire fraud scheme. In 17 of the 21 counts, the wires that formed the basis for the counts in the indictment were, in fact, emails. Moreover, the specific count to which the defendant pled guilty involved an email. The emails that defendant appellants sent or caused to be sent included false statements to induce investors to invest or to keep their investments in a film production project. That project involved the production of videos relating to the Boy Scouts of America and specifically to merit badge requirements. The videos were intended to be marketed to Boy Scout groups throughout the United States. Among other things, defendant falsely represented that he had a licensing agreement with the Boy Scouts of America. He falsely represented that investor money would be spent only on film production, that investor money was being held in a production account in the name of the film production business, which was known as G.E.T. Entertainment, and he falsely represented that a detailed accounting record of project expenditures could be reviewed by investors upon their request. Through his efforts in the scheme alone, defendant defrauded 58 victims of over a million dollars. Some of defendant appellants' victims addressed the district court at sentencing, and they stated their belief that the defendant appellant would reoffend once he is released from custody. Defendant's ex-wife, Vicki Weigel, said a similar thing to the probation officer and said... Well, we've read all of that. So why are these conditions appropriate? I guess as a beginning... They're all related. Sure. So, right, as a beginning point, the court doesn't even need to look to the actual conduct of the particular case. The court needs to look to whether or not there's a nexus between the applicable 3553A factors and the specific conditions that are imposed. And I would say to this court that this case actually goes much further than that because in this case the actual offense conduct at its core component involves not only the use of computers but the use of Internet and e-mail specifically. So why isn't it all just everything? Why aren't these conditions just limited to that? Why shouldn't they just be limited to the use of the Internet or use of programs or applications that allow one to communicate with other, you know, like Facebook. Exclusively e-mail or something like that. Yeah. Well... Instead, it seems to apply to if he's using Word to craft a document. Agreed. If I may, Your Honor, one other part of the record in this case is that Vicki Weigel, the defendant's ex-wife, had informed the probation officer that in 2010 she found a document on her computer that the defendant had crafted that promoted a fictitious film, the biography of Enzo Ferrari. And in that document he had stated falsely certain things about his wife, who supposedly had authored this but she had not, had falsely stated certain things about her career experience and also that the film already had an agreement with Universal Studios to be produced... How does all of this speak to computer use? I mean, he might have used pen and paper in connection with his fraud too and yet there are no conditions that, and I've never heard of a condition that says somebody in supervised release can't use pen and paper or can only use pen and paper when reporting to the probation officer. I mean, the computer, we all have in our pockets or our purses devices that are now more powerful than could have been imagined a few years ago. Why is it that the fact that he happened to use a computer along the way justifies the level of intrusion provided by these conditions? Agreed, Your Honor. If I may, to start with, it's not that he's prohibited from using the computer or the Internet or email. There's no, one thing that was problematic in some prior cases before this court was that pre-authorization was required from the probation officer, for example, and that's not the case here. Here, only notice is required. The defendant needs to advise the probation officer, this is the computer I'm using, and specifically this is the, it doesn't apply to worksite computers, for example. And so this, yes? So in other words, let's say he had an iPad. It's the government's position that all this condition means is that he has to tell the probation officer that he has an iPad that he is using. What is imposed on him beyond that? So, Your Honor, as I understand it, there's three conditions that the defense is challenging here, although I think in an oral argument the folks assume more on two. And so the first of the three conditions, as Your Honor stated, essentially boils down to notice. The defendant needs to provide notice to the probation officer that these are the computer or computer-related devices that are being used. So exactly as Your Honor described it. And then the second provision allows for search, a search of those devices as the probation officer might choose to do. And then the third provision calls for a computer monitoring program, and it specifically indicates that there's a maximum cost involved for each device that would be connected to the Internet. And what does the computer monitoring program entail now, as it's been revised by the government? Right. And so I think that's one of the things that Mr. Tanaka was referring to. Right. And so, as I understand it, there's a – I followed it with the court. There's a 2013 version of what's known as the computer monitoring program rules and participation. Just summarize it, of course. What's in it? It essentially – my understanding is, yes, that it does allow for keystroke monitoring, which – Okay. The defendant has to attach a device to his computer or whatever it is, right? I think it could. I think that could be the case, but I – so it kind of – so it allows for different mechanisms to be used. And I think one of the things that is implicitly acknowledged here, and I think that this Court acknowledged in the – I don't know how to pronounce it – the Keen's own opinion, which I think was perhaps from 2011, is that technology is evolving over time, and the ways in which computers could be monitored or Internet usage could be monitored over time can change. Yeah, okay, so we grant you that. But as we sit here and speak, just summarize, what does this computer monitoring program consist of? It – my understanding is that it allows for up to essentially keystroke monitoring of the computer usage as it relates to the Internet. And – Reif describes it as permitting monitoring of the defendant's online computer use and goes on to say it does not authorize the probation office to monitor all of defendant's computer activity. So if he sits there working on a Word document, and Word is installed on his computer, do I understand correctly the monitoring program does not reach that? That is my understanding, Your Honor, and I – Is that an understanding you're prepared to let us adopt? I mean, can we take the language stated in your brief as gospel for this purpose? Is the proper interpretation of the conditions before us? I understand, Your Honor. If I may explain. So in my reading of the 12 paragraphs in the 2013 version, that is not explicitly stated. We could restate it ourselves if we decide that's critical to the interpretation of the conditions. Yes, Your Honor. And that is, in fact, what the government's brief says here. Yes, Your Honor. And that is my understanding. And the answer is yes. Yes, Your Honor. And that's based off of the Keen's own opinion in combination with the specific language in the supervisory's condition. On a somewhat technical matter, does the government contest that there's a discrepancy between the announced term, I think it's condition four, and the written judgment? This is having to do with the language of funds versus investment, Your Honor? Yeah. No, the government is in agreement that there should be a limited remand in this case for the purpose of the district court. Correcting the written judgment. Yes, Your Honor. Anything further? No, Your Honor. I submit. Okay. All right, Mr. Tanaka, you can have a minute. I just want to make sort of a global point. These conditions arose initially when they made sense in the possession of child porn over the Internet cases. Now they've creeped into almost any federal offense can be said to be computer related. And accordingly, especially the search and seizure without any cause of one's cell phone, one's iPad. Well, I mean, your argument was effective in the sense that the government, as I heard it, dialed back from some of these concerns that you were hurt when you started. So you were successful to that point. So given the government's representation of where we are now, what are the conditions that you continue to object to? I still continue to object to the search and seizure of computer and computer related devices for no reason at all. Not no reason. Your client conducted a fairly large scale fraud using a computer. That's a reason. I would hate to see these conditions imposed in each and every federal case where there's a use of a computer. Okay. Thank you. Thank you, Mr. Tanaka. We appreciate your arguments in this matter. It's submitted.
judges: Parker, Paez, Clifton